### WHITE *v.* THE STATE.

1. In order to render a citizen amenable to section 1103(y) of the code for wilfully disturbing or interrupting a military parade by obstructing a public street in a city, it must appear that the parade in question was one authorized by law.
2. A policeman may, without a warrant, arrest a citizen for a violation of the above mentioned section, if the offense is committed in the policeman's presence, the power of arrest conferred upon the commanding military officer being merely cumulative of the general duty imposed upon civil officers to make arrests for criminal offenses.
3. Where in a given instance an arrest was made by a policeman, without a warrant, for an alleged violation of this section, it was incumbent upon the officer, in order to justify his act in making the arrest, to show affirmatively that the parade in question was being had in accordance with rules adopted by the military organization then on parade, or that, in the absence of such rules, such parade had been ordered by the commanding officer, or else by the Governor of the State.
4. It not appearing in the present case that the parade for obstructing which the prosecutor was arrested was had in accordance with the provisions of the section last cited, the jury were authorized to find that such arrest was unwarranted by law; and therefore, irrespective of alleged errors on the part of the trial judge, the verdict was right and should not be set aside.
March 23, 1896.

Accusation of false imprisonment. Before Judge Berry. Criminal court of Atlanta. January term, 1896.

*J. A. Anderson* and *George Westmoreland,* for plaintiff in error. *James F. O'Neill, solicitor,* contra.

ATKINSON, Justice.

The defendant White was tried in the city court of Atlanta upon an accusation charging him with the offense of false imprisonment. It appears from the evidence that he was a police officer in the city of Atlanta; that upon the day

on which it was alleged that the offense was committed, he was on duty and assigned by the chief of police to assist in the duty of clearing the streets of vehicles which might obstruct the progress of a certain military parade which was being that day held in honor of the presence in the city of certain civic and military organizations. The prosecutor was seated in his buggy upon one of the streets being traversed by this military parade, and refusing to make way, was, without a warrant having been previously issued, placed under arrest by the police officer; and for making this arrest the latter was being tried. The evidence showed, that while the parade in question was complimentary to the visiting organizations above referred to, such parades were "counted" as amongst the number of parades prescribed by law, other similar instances being mentioned.

1. According to the view we take of the evidence in this case, it will not be necessary to consider in detail the various questions which were made upon the trial of the case. There was no dispute that the prosecutor had been arrested. There was no evidence that a warrant had issued for his arrest, and the police officer sought to justify upon the ground that the prosecutor had committed an offense against the laws of this State in his presence, and hence he was authorized to make the arrest. Ordinarily this is a good reply to a prosecution for false imprisonment, but it necessarily involves the inquiry as to whether an offense has in fact been committed. Section 1103(x) of the code provides, that "Every company of volunteers shall parade at least four times in every year, and every battalion at least once in every year, the times to be appointed by the rules adopted by such company or battalion, or in the absence of such rules, by its commanding officer. The Governor may order such other parades, not exceeding one in any year, of any company or battalion, as he may think proper, for inspection or review, by the adjutant-general or such officer of volunteers as he may designate for that duty." Section

1103(y) of the code provides, that "The officer command-- ing any detachment, company or battalion at any parade, or during the performance of any other duty ordered by proper authority, shall have authority to arrest and place under confinement, during the continuance of such duty, any person who shall in any way wilfully disturb or in-- terrupt the peaceable and orderly proceedings of such de- tachment, company or battalion, and such person shall, moreover, be liable to prosecution in the superior court of the county where the offense is committed, and on con- viction, shall be fined in a sum not exceeding fifty dollars or be imprisoned not more than twenty days, or both, at the discretion of the court."

In times of peace the public highways in this country belong to the public, and are to be used by the public in a proper way in the prosecution of peaceful pursuits. With-- out express legislative authority no man or body of men can appropriate to their own exclusive use any of the public highways. It is competent, however, for the legislature to withdraw temporarily from the general public use any public highway, and devote it for the time being to a public use of a special character; and in the exercise of this power the legislature adopted the provisions of the code above referred to, stating the conditions upon which public ways might be temporarily appropriated to military operations. They provide that parades shall be held four times in each year, and that while such parades are in prog-- ress, any person who wilfully disturbs or interrupts the military procession shall be liable to indictment. The times at which such parades are to be held are not fixed by law, but it is expressly provided that they may be held at times which are to be appointed by the rules adopted by the military company or battalion thus parading, or, in the absence of such rules, by its commanding officer. The rule adopted by the company fixing the time at which such parades are to be held, and in the absence of a rule to that

effect, an order by the commanding officer fixing such time, becomes the law unto the general public, and makes a parade held under such circumstances a lawful parade, the obstruction of which is prohibited by law.    In the present case the evidence was silent as to whether the company had fixed the time and place of its annual parades by rule, and the authority of the commanding officer being dependent upon the non-existence of such rule, it does not appear that the parade in question was one of those authorized to be held under the provisions of the code to which reference is hereinabove made.    It follows then that if the parade being held was not one of those authorized by law, no offense against the statute in question was committed by any person who may have interrupted it.

2. The authority conferred upon the commanding officer of any detachment, company or battalion at parade to arrest and place under confinement a person who wilfully disturbs or interrupts the peaceable progress of such a parade, is merely cumulative.    The provisions of that section of the code do not confine the power to make arrests for these offenses to military authorities alone, but it being an offense against the laws of the State, the power of the police officers of the State, or the city, where the offense is committed within the corporate limits of a city, to make arrest is conferred by general law in all cases where the offense is committed in the immediate presence of the officer.

3. In the present case, the arrest not having been made in pursuance of a warrant, the burden of proof was on the defendant, in order to justify the arrest, to show the commission of an offense in his presence by the person arrested, and proof of this fact involved the further proof by him that the parade in question was being had in accordance with the rules adopted by the military organization then on parade, or that, there being no such rules, such parade had been ordered by the commanding officer.    It was not insisted in the present case that this parade was held by virtue

of any order made by the Governor of this State, under authority of the last portion of section 1103(x) of the code.

4. The notion that because the highways in this State are public, they are therefore liable to exclusive appropriation by any body of men, whether a civic or military organization, has no countenance in the law. As has been said before, it is perfectly competent for the State to provide for their temporary appropriation for these purposes, and when this is done by appropriate legislation, persons in whose favor those exclusive rights are granted must conform to the statutory provisions granting the right. To hold that the streets of a city were subject at all times to appropriation for these purposes, and to hold that these provisions of law authorized the military or civic organizations of this State to parade at any time they might see proper, without reference to the law regulating such parades, might seriously embarrass private citizens in the prosecution of their ordinary peaceful pursuits. An occasional military display is not unpleasing to the public eye, but where they tend to interfere with the more serious concerns of private persons, it is well enough that they should be limited to such times and places as the legislature may see proper to authorize. In the view we have taken of this case, it is unnecessary to consider in detail the minor errors alleged to have been committed on the trial.

*Judgment affirmed.*